UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VALERIE CHERRY,

       Plaintiff,

v.

NATIONAL LANDMARK LOGISTICS, LLC,
LIBERTY SOLUTIONS & ASSOCIATES, LLC,
FREEDOM MANAGEMENT AND CONSULTING, LLC,
EXCELLENT CONSULTING FIRM, LLC,
EXCELLENT PROPERTIES AND INVESTMENTS, LLC,
JEAN PIERRE CELLENT, FRANK E. MCBRIDE,
JMFS LLC, BRIAN A. ROSSMEISL,
L&J MULTI-STATE SOLUTIONS, LLC and
LOREN STOKES,

       Defendants.

_____/

## COMPLAINT

**I.    Introduction**

1.    This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq*.

2.    Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country

1

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones operated by hundreds of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Fort Mill and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located

in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed

November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

## II.     Jurisdiction

6.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.    Parties

7.     Plaintiff Valerie Cherry, formerly known as Valerie Johnson, is an adult, natural person residing in Kent County, Michigan.  Ms. Cherry is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Cherry is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.     Defendant National Landmark Logistics, LLC ("NLL") is an active South Carolina limited liability company, formed on or about May 23, 2016, and purportedly doing business at 2203 Deerfield Drive, Fort Mill, South Carolina 29715-6941 (a commercial building owned by non-party Stajos Development LLC). The registered agent for NLL is defendant Jean Pierre Cellent, 2203 Deerfield Drive, Fort Mill, South Carolina 29715-6941. NLL uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NLL regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NLL is a "debt collector" as the term is defined and used in the FDCPA. NLL is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, NLL is a "collection agency" and "licensee" as the terms are defined and used in MOC.

4

9.      NLL became registered on September 23, 2016 to transact business in the State of Ohio using the name UBS Trstar Systems, LLC. The filed registration documents state that defendant Jean Pierre Cellent is the Owner of NLL and that defendant Frank E. McBride is a Managing Member of NLL. The NLL registered agent in Ohio is defendant Jean Pierre Cellent, 6956 East Broad Street, "Suite 178," Columbus, Ohio 43213. However, that address is merely a private mailbox rented by defendants from Dan Dressel, Inc., doing business as The UPS Store No. 2649.

10.     NLL directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

11.     Defendant Liberty Solutions & Associates, LLC ("LSA") is an active South Carolina limited liability company, formed on or about April 8, 2015, and purportedly doing business at 1646 Highway 60, "Suite 8149," Fort Mill, South Carolina 29708. However, that address is merely a private mailbox rented by defendants from PostNet Store No. 110. The registered agent for LSA is Eric Dennison, 1646 Highway 60, "Suite 8149," Fort Mill, South Carolina 29708.  LSA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. LSA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. LSA is a "debt collector" as the term is defined and used in the FDCPA. LSA is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, LSA is a "collection agency" and "licensee" as the terms are defined and used in MOC.

12.     LSA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

13.     According to the Better Business Bureau, LSA also does business under the

unregistered assumed name of "UBS Systems, LLC."

14.     Defendant Freedom Management and Consulting, LLC ("FMC") is an active Ohio limited liability company, formed on or about October 11, 2016. The managing member and registered agent for FMC is defendant Frank E. McBride, 6956 East Broad Street, "Suite 178," Columbus, Ohio 43213, which is the same private mailbox rented by defendants and used as the Ohio address for defendant NLL, doing business in Ohio as UBS Trstar Systems, LLC. FMC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. FMC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. FMC is a "debt collector" as the term is defined and used in the FDCPA. FMC is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, FMC is a "collection agency" and "licensee" as the terms are defined and used in MOC.

15.     FMC directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

16.     Defendant Excellent Consulting Firm, LLC ("ECF") is an active North Carolina limited liability company, formed on or about June 1, 2010. The managing member and registered agent for ECF is defendant Jean Pierre Cellent, 6125 Lakeview Road, Suite 100, Charlotte, North Carolina 28269. The registered principal office mailing address for ECF is P.O. Box 38003, Charlotte, North Carolina 28278, which is the same post office box that has been used for a period of years by Mr. Cellent and Mr. McBride to conduct their unlawful debt collection operation that is described in this complaint. ECF uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ECF regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. ECF is a "debt collector" as the term is defined and used in the FDCPA. ECF is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, ECF is a "collection agency" and "licensee" as the terms are defined and used in MOC.

17.     ECF directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

18.     Defendant Excellent Properties and Investments, LLC ("EPI") is an active North Carolina limited liability company, formed on or about April 2, 2013. The managing member and registered agent for EPI is defendant Jean Pierre Cellent, 6125 Lakeview Road, Suite 100, Charlotte, North Carolina 28269. The registered principal office mailing address for EPI is P.O. Box 38003, Charlotte, North Carolina 28278, which is the same post office box that has been used for a period of years by Mr. Cellent and Mr. McBride to conduct their unlawful debt collection operation that is described in this complaint. EPI uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. EPI regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. EPI is a "debt collector" as the term is defined and used in the FDCPA. EPI is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, EPI is a "collection agency" and "licensee" as the terms are defined and used in MOC.

19.     EPI directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

20.     Defendant Jean Pierre Cellent is a natural person, age 28, purportedly residing at 556 Becker Avenue, Fort Mill, South Carolina 29715-8395. Mr. Cellent has an extensive criminal history, including an arrest for assault with a deadly weapon. Mr. Cellent is an owner, officer, member, manager, employee and agent of defendants NLL, LSA, ECF and EPI. Mr.

7

Cellent uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cellent regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cellent is a "debt collector" as the term is defined and used in the FDCPA. Mr. Cellent is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Cellent is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

21.     Mr. Cellent (a) created the collection policies and procedures used by NLL, LSA, ECF and EPI and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NLL, LSA, ECF and EPI, (c) oversaw the application of the collection policies and procedures used by NLL, LSA, ECF and EPI and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NLL, LSA, ECF and EPI and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Cherry as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NLL, LSA, ECF and EPI and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NLL, LSA, ECF and EPI and their employees and agents, in attempts to collect an alleged debt from Ms. Cherry as stated in this complaint.

22.     Mr. Cellent directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

23.     Defendant Frank E. McBride, also known as Frank Eugene McBride III, age 35, is

a natural person, likely residing at 4718 Lapis Court, Fort Mill, South Carolina 29708, 3400 Reid

Avenue, Charlotte, North Carolina 28208-7122, or 2347 Pruitt Street, Charlotte, North Carolina

28208. Mr. McBride receives mail at P.O. Box 38003, Charlotte, North Carolina 28278 and P.O.

Box 242433, Charlotte, North Carolina 28224-2433.  Mr. McBride is an owner, officer, member,

manager, employee and agent of defendants NLL, LSA and FMC.  Mr. McBride uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

Mr. McBride regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another.  Mr. McBride is a "debt collector" as the term is defined and

used in the FDCPA.  Mr. McBride is a "regulated person" as the term is defined and used in the

MRCPA.  Alternatively, Mr. McBride is a "collection agency" and  "licensee" as the terms are

defined and used in the MOC.

24.     Mr. McBride (a) created the collection policies and procedures used by NLL, LSA

and FMC and their employees and agents, in connection with their common efforts to collect

consumer debts, (b) managed or otherwise controlled the daily collection operations of NLL,

LSA and FMC, (c) oversaw the application of the collection policies and procedures used by

NLL, LSA and FMC and their employees and agents, (d) drafted, created, approved and ratified

the tactics and scripts used by NLL, LSA and FMC and their employees and agents, to collect

debts from consumers, including the tactics and scripts that were used to attempt to collect an

alleged debt from Ms. Cherry as stated in this complaint, (e) ratified the unlawful debt collection

practices and procedures used by NLL, LSA and FMC and their employees and agents, in

connection with their common efforts to collect consumer debts, and (f) had knowledge of,

approved, participated in, and ratified the unlawful debt collection practices used by NLL, LSA

and FMC and their employees and agents, in attempts to collect an alleged debt from Ms. Cherry as stated in this complaint.

25.     Mr. McBride directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

26.     On August 25, 2017, a UCC Statement (170825-1615078) was filed with the South Carolina Secretary of State, naming NLL as debtor, TD Bank, N.A. as secured party, and listing accounts receivables, chattel paper, and the proceeds thereof, as well as computers and equipment as collateral. TD Bank, N.A. financed defendants' unlawful debt collection scam, specifically, the purchase of portfolios of allegedly delinquent consumer accounts (some stolen) as well as the equipment to be used to collect those accounts.

27.     NLL and Mr. Cellent sometimes receive mail at 1015 Charlotte Avenue, Suite 123, Rock Hill, South Carolina 29732-3016, which is a private mailbox rented by defendants from ANP, Inc., doing business as The UPS Store No. 4411. Mr. Cellent used this same private mail box in the past to conduct his unlawful debt collection scam through multiple and now defunct entities that he owned and controlled, including National Landmark Services of United Recovery, LLC, an Ohio limited liability company, and Capital Recovery Solutions, LLC, an Arizona limited liability company.

28.     Defendants maintain an internet domain, www.capitalinfo.co, which was registered anonymously on July 21, 2017 through domainsbyproxy/GoDaddy, LLC, and which defendants use to send and receive email from various email addresses, including docs@capitalinfo.co/domainsbyproxy.com.

29.     Defendants also maintain an internet domain, www.logisticsnow.info, which was

registered anonymously on June 24, 2016 through domainsbyproxy/GoDaddy, LLC, and which

defendants use to send and receive email from various email addresses, including

customerservice@logisticsnow.info@domainsbyproxy.com.

30.     Defendants also maintain an internet domain, www.libertysagroup.com, which

was registered anonymously on December 8, 2016 through Perfect Privacy, LLC, and which

defendants use to send and receive email from various email addresses, including

support@libertysagroup.com. The internet domain links to an internet website which states that

LSA is in the business of collecting consumer debts and provides a contact telephone number of

855-862-4552.

31.     Defendant JMFS LLC ("JMFS") is an active North Carolina limited liability

company, formed on or about June 7, 2017. Documents filed by JMFS with the State of North

Carolina falsely state that the JMFS principal business office is located at 2217 Matthews

Township Parkway, Suite D, Matthews, North Carolina 28105. In fact, the address is merely a

private mailbox rented from NAYOSA, LLC, doing business as The UPS Store No. 2729. The

"principal office telephone number" filed by JMFS with the State of North Carolina is 704-231-

2892, which actually is the personal cellular telephone number for defendant Brian A. Rossmeisl.

The registered agent for JMFS is Business Filings International, Inc., 160 Mine Lake Court, Suite

200, Raleigh, North Carolina 27615-6417. JMFS uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts. JMFS regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. JMFS is a "debt collector" as the term is defined and used in the FDCPA. JMFS is a

"regulated person" as the term is defined and used in MRCPA.  Alternatively, JMFS is a

"collection agency" and "licensee" as the terms are defined and used in MOC.

32.     JMFS directly and indirectly participated in the unlawful debt collection practices

to collect an alleged debt from Ms. Cherry that are described in this complaint.

33.     Defendant Brian A. Rossmeisl, age 38, is a natural person, purportedly residing at

9435 Peckham Rye Road, Charlotte, North Carolina 28227-0415. Mr. Rossmeisl receives mail at

a private mailbox rented from NAYOSA, LLC, doing business as The UPS Store No. 2729, 2217

Matthews Township Parkway, Suite D, Matthews, North Carolina 28105. Mr. Rossmeisl sends

and receives email from brian.rossmeisl@gmail.com. Mr. Rossmeisl is an owner, officer,

member, manager, employee and agent of defendant JMFS. Mr. Rossmeisl uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

Mr. Rossmeisl regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another.  Mr. Rossmeisl is a "debt collector" as the term is defined

and used in the FDCPA.  Mr. Rossmeisl is a "regulated person" as the term is defined and used

in the MRCPA.  Alternatively, Mr. Rossmeisl is a "collection agency" and  "licensee" as the

terms are defined and used in the MOC.

34.     Mr. Rossmeisl (a) created the collection policies and procedures used by NLL,

LSA and JMFS, and their employees and agents, in connection with their common efforts to

collect consumer debts, (b) managed or otherwise controlled the daily collection operations of

NLL, LSA and JMFS, (c) oversaw the application of the collection policies and procedures used

by NLL, LSA and JMFS and their employees and agents, (d) drafted, created, approved and

ratified the tactics and scripts used by NLL, LSA and JMFS and their employees and agents, to

collect debts from consumers, including the tactics and scripts that were used to attempt to

collect an alleged debt from Ms. Cherry as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NLL, LSA and JMFS and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by NLL, LSA and JMFS and their employees and agents, in attempts to collect an alleged debt from Ms. Cherry as stated in this complaint.

35.    Mr. Rossmeisl directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

36.    Defendant L&J Multi-State Solutions, LLC ("L&J") is an active New York limited liability company, May 23, 2014, and purportedly doing business at 206 Garden Parkway, Apartment Upper, Williamsville, New York 14221. L&J uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. L&J regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. L&J is a "debt collector" as the term is defined and used in the FDCPA. L&J is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, L&J is a "collection agency" and "licensee" as the terms are defined and used in MOC.

37.    L&J directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

38.    Defendant Loren Stokes, age 34, is a natural person, purportedly residing at 206 Garden Parkway, Apartment Upper, Williamsville, New York 14221-6628. Mr. Stokes sends and receives email from jwill28james@aol.com. Mr. Stokes is an owner, officer, member, manager, employee and agent of defendant L&J. Mr. Stokes uses interstate commerce and the mails in a

business the principal purpose of which is the collection of debts.  Mr. Stokes regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Stokes is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Stokes is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Stokes is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

39.    Mr. Stokes directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Cherry that are described in this complaint.

40.    Defendants and their employees and agents, in efforts to conceal their true identities and location, conduct their unlawful debt collection scam using multiple, unregistered names, including: Capital, Offices of Capital, Capital Litigation, NLS Processing, UBS, UBS Systems, and UBS Processing.

41.    Defendants and their employees and agents conduct their unlawful debt collection scam using multiple telephone numbers, including the following: 800-250-6733, 803-630-1338, 844-202-9521, 844-218-3517, 844-220-0519, 844-221-5017, 844-221-9386, 844-336-2754 and 877-283-9195. The Responsible Organization for each of these telephone numbers is Bandwidth.com, Inc.

42.    Non-party United Movement International is an active North Carolina non-profit corporation, incorporated on or about April 21, 2016 by defendant Jean Pierre Cellent, with a registered principal office mailing address of P.O. Box 38003, Charlotte, North Carolina 28278, which is the same post office box that has used for a period of years by Mr. Cellent and Mr. McBride to conduct their unlawful debt collection operation that is described in this complaint. It will need to be determined in discovery to what extent, if any, United Movement International

participated in the unlawful efforts to collect an alleged debt from Ms. Cherry that are described in this complaint.

43.    All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

44.    An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

45.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for

the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

46.    In or about December of 2011, plaintiff Valerie Cherry borrowed several hundred dollars from a lender named The Cash Store at a store front in Jenison, Michigan. Ms. Cherry borrowed the money by way of a "payday loan" (Account No. 9231008014) in a transaction made pursuant to the Deferred Presentment Service Transaction Act, M.C.L. § 487.2121 *et seq.* The loan was made at an annualized interest rate of more than 300 percent. In connection with the transaction, Ms. Cherry provided The Cash Store with a post-dated check drawn on Ms. Cherry's checking account, which the payday lender was to present for payment when the loan became due in a few weeks.

47.    Ms. Cherry used the borrowed funds to purchase goods and services for personal, family, and household purposes. Any resulting obligation of Ms. Cherry to repay the borrowed money was a "debt" as the term is defined and used in the FDCPA, MCPA, and MOC.

48.    When The Cash Store presented Ms. Cherry's post-dated check for payment, the check was dishonored because Ms. Cherry had failed to deposit sufficient funds in her account to cover the check.

49.    The Deferred Presentment Service Transactions Act states: "A drawer is not

subject to criminal penalty for entering into a deferred presentment service transaction and is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4). In other words, in Michigan the failure to repay a payday loan is treated like any other simple breach of contract matter.

50.     The Cash Store charged off and sold Ms. Cherry's account and related debt.

51.     In October of 2016, agents and employees for entities named Check and Credit Services LLC, a Delaware limited liability company, and Nationwide Sales & Services LLC, a Florida limited liability company (collectively, the "Nationwide Entities") placed multiple telephone calls to Ms. Cherry, claimed that they had purchased Ms. Cherry's account, threatened Ms. Cherry with litigation and prosecution, and demanded that Ms. Cherry pay them money. Ms. Cherry hired an attorney to represent her. On November 5, 2016, Ms. Cherry and the Nationwide Entities settled their dispute and the alleged debt was extinguished.

52.     In April of 2017, agents and employees for entities named Capital Currency Solutions, LLC, SG Alliance, Inc., CGE Processing LLC, Great Lakes Capital Management, LLC, Stephen Skotarczak, Daniel Skotarczak Jr., Jason S. Garofalo, Spire Recovery Solutions LLC, Spire Billing Services LLC, Tier 1 Asset Management Group, LLC, Torriere Holdings Inc., Portview Billing Services LLC, Market Street Debt Partners LLC, Joseph Torriere, Jacob Torriere, John D. Verbocy and Stephen C. Verbocy (collectively the "Torriere Entities") placed multiple telephone calls to Ms. Cherry, claimed that they had purchased Ms. Cherry's account, threatened Ms. Cherry with litigation and prosecution, and demanded that Ms. Cherry pay them money.

53.     As it turned out, the Torriere Entities had either stolen Ms. Cherry's account

17

information, or had otherwise purchased Ms. Cherry's stolen account information along with other private personal and financial information regarding Ms. Cherry, and the Torriere Entities used that stolen information to contact and threaten Ms. Cherry with prosecution and other adverse consequences in efforts to coerce Ms. Cherry to pay money that the Torriere Entities had no right to collect and that Ms. Cherry did not owe.

54.     Ms. Cherry hired an attorney to represent her. On May 9, 2017, Ms. Cherry and the Torriere Entities settled their dispute. The related settlement agreement and release expressly described the account and stated that the alleged debt was extinguished.

55.     Upon information and belief, and despite the foregoing, one or more of the Torriere Entities sold Ms. Cherry's stolen account information along with other private personal and financial information regarding Ms. Cherry to one or more of the entities named as defendants in this lawsuit. Alternatively, one or more of the Torriere Entities sold Ms. Cherry's stolen account information to entities who then placed the stolen account information with one or more of the entities named as defendants in this lawsuit for the purpose of coercing the payment of money from Ms. Cherry on a debt that Ms. Cherry did not owe.

56.     In or before October of 2017, defendants L&J Multi-State Solutions, LLC and Loren Stokes obtained Ms. Cherry's stolen account information along with other private personal and financial information regarding Ms. Cherry and then sold the information to defendant National Landmark Logistics, LLC or to one of the other defendant corporate entities controlled by Mr. Cellent and Mr. McBride.

57.     In or before October of 2017, defendant NLL or one of the other defendant corporate entities controlled by Mr. Cellent and Mr. McBride transferred Ms. Cherry's stolen

18

account information along with other private personal and financial information regarding Ms. Cherry to defendants JMFS LLC and Brian A. Rossmeisl for the purpose of coercing the payment of money from Ms. Cherry.

58.    On or about October 12, 2017, defendants' employee and agent (known as a "point caller") placed a call to Ms. Cherry's cellular telephone and used a computerized voice to leave the following pre-recorded, scripted message on Ms. Cherry's voice mail: "This is Monica Lewis contacting Valerie Johnson. You are being notified of a claim in our office that is being filed against you. We will be verifying your current address as well as place of employment for delivery of the proper documentation. At this time, it is your legal right to contact the office directly at 844-336-2754. Again, that is 844-336-2754, or press 1 to be connected immediately. This will serve as an official and final notification by phone."

59.    On or about October 12, 2017, defendants' employee and agent placed a call to Ms. Cherry's aunt and used a computerized voice to leave the following pre-recorded, scripted message on Ms. Cherry's aunt's residential telephone answering machine: "This is Monica Lewis contacting Valerie Johnson. You are being notified of a claim in our office that is being filed against you. We will be verifying your current address as well as place of employment for delivery of the proper documentation. At this time, it is your legal right to contact the office directly at 844-336-2754. Again, that is 844-336-2754, or press 1 to be connected immediately. This will serve as an official and final notification by phone." Ms. Cherry's aunt contacted Ms. Cherry and delivered the message, causing Ms. Cherry to suffer extreme embarrassment.

60.    On or about October 13, 2017, defendants' employee and agent placed another call to Ms. Cherry's cellular telephone and used a computerized voice to leave the following pre-

recorded, scripted message on Ms. Cherry's voice mail: "This is Monica Lewis contacting Valerie Johnson. You are being notified of a claim in our office that is being filed against you. We will be verifying your current address as well as place of employment for delivery of the proper documentation. At this time, it is your legal right to contact the office directly at 844-336-2754. Again, that is 844-336-2754, or press 1 to be connected immediately. This will serve as an official and final notification by phone."

61.     On October 19, 2017, Ms. Cherry placed a return call to defendants at 844-336-2754 and spoke with defendants' employee and agent who identified herself as "Kimberly Williams" at extension 206. In the ensuing conversation, defendants' employee and agent made the following statements to Ms. Cherry:

a)     We do have a legal matter here that is being pursued for a wage garnishment against you. . . . So if you can hold your questions and your concerns for me, I'll go ahead and go over your complaint in its entirety and let you know exactly what is going on. . . .  You are being pursued at this time for the intent to defraud a bank or financial institution, as well as a breach of contract. This is actually stemming from a financial loan that was taken out through our client, The Cash Store. They are stating that your balance totals $1,025.00 even. Now, the actual problem came up when the agreed upon date for you to pay them back, they never received their funds. Your account did show an R02 status which is indicating either an insufficient account, or a closed account. So basically, at this point, in the eyes of the plaintiff, it does appear as if you willingly and

knowingly did receive a loan with the intent to defraud our client. I'm sure that wasn't your intention by any chance, but for whatever the case was at that time, whether it was financial issues, a job loss, sickness, anything of that sort."

b)   "Once [a payment] arrangement is on file, we will go ahead and release that order out to the sheriff for you. That will cease and desist him pursuing you with that subpoena so that's of course something that you will not have to worry about, okay?"

c)   The account has been with "three separate collection agencies. It happens for every account, unfortunately for these particular claims they place it three times for collection then litigation status and we're actually obligated to pursue it up to 25 years for court. Unfortunately, as of 2017, your account and a couple hundred other individuals are being pursued, but you're one of the few ones that didn't have any fraudulent activity or probation listed on your background, so that was a very good thing on your behalf."

62.    On October 19, 2017, in response to the above-quoted messages left and statements made by defendants' employees and agents, Ms. Cherry paid $100.00 to defendants by debit card, for the sole purpose of identifying and locating the anonymous entities who had obtained Ms. Cherry's stolen personal and financial information and had used that information to communicate with Ms. Cherry in efforts to extort the payment of money from Ms. Cherry with false threats of criminal prosecution and litigation. According to JPMorgan Chase Bank, N.A.,

the entity who debited the payment was "National Landmark Logistics" in South Carolina, with a telephone number of 877-283-9195.

63.     On October 19, 2017, Ms. Cherry received an email from defendants. The email address used by defendants to send the email was docs@capitalinfo.co. Attached to the email was a letter dated October 19, 2017 on the letterhead of "Offices of Capital." The letter stated that Ms. Cherry owed $1,525.00 in connection with the account she had with The Cash Store, net the payment of $100.00 paid to defendants that day. A copy of the email and letter are attached to this complaint as Exhibit A.

64.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

65.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

66.     Defendants and their employees and agents failed to identify the current owner of the alleged debt.

67.     Defendants and their employees and agents falsely represented and falsely implied that there were legal claims pending against Ms. Cherry.

68.     Defendants and their employees and agents falsely represented and falsely implied that criminal charges were pending against Ms. Cherry.

69. Defendants and their employees and agents falsely represented and falsely implied that a lawsuit had been filed or would be filed against Ms. Cherry to collect the alleged debt.

70. Defendants and their employees and agents falsely represented that the name of their company was "Offices of Capital."

71. Defendants and their employees and agents falsely represented and falsely implied that if Ms. Cherry did not pay money to defendants, her wages and assets would be garnished.

72. Defendants and their employees and agents falsely represented and falsely implied that a subpoena had been sent to the "sheriff" for service on Ms. Cherry.

73. Defendants and their employees and agents falsely represented the amount of the alleged debt.

74. Defendants and their employees and agents falsely represented that lawyers were involved in the efforts to collect money from Ms. Cherry.

75. Defendants and their employees and agents falsely represented and falsely implied that Ms. Cherry had committed a crime.

76. Defendants and their employees and agents falsely represented and falsely implied that they had the right to collect the alleged debt, when in fact defendants had stolen the account and Ms. Cherry's personal financial information, or had otherwise acquired the stolen account and Ms. Cherry's stolen personal financial information.

77. Defendants did not intend to file a lawsuit against Ms. Cherry in any Michigan court in efforts to collect the alleged debt.

78. No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

79.     Defendants and their employees and agents falsely represented and falsely implied that they had run a criminal background check on Ms. Cherry.

80.     Defendants and their employees and agents falsely represented and falsely implied that they were "obligated to pursue" Ms. Cherry in court for "up to 25 years."

81.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

82.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

83.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

84.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

85.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

86.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

87.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15

U.S.C. § 1692e(3).

88.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

89.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

90.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

91.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

93.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

94.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §

1692e(10).

95.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

96.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

97.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

98.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

99.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

100.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

101.    Defendants and their employees and agents falsely accused Ms. Cherry of committing a crime.  Ms. Cherry did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

102.    Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

103.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

104.    Defendants and their employees and agents failed to timely send to Ms. Cherry a notice containing the information required by 15 U.S.C. § 1692g(a).

105.    Each defendant and each defendant's employees, managers, members, officers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

106.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

107.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15

27

U.S.C. § 1692(e).

108.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

109.     In connection with efforts to collect an alleged debt from Ms. Cherry, defendants obtained personal information regarding Ms. Cherry from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

110.     Alternatively, in connection with efforts to collect an alleged debt from Ms. Cherry, defendants obtained personal information regarding Ms. Cherry from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

111.     The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

112.     The TLO database is derived in part from non-public motor vehicle records.

Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

113.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

114.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

115.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

116.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

117.    The DPPA enumerates the only "permissible uses" for which personal

information may be obtained.   18 U.S.C. § 2721(b).

118.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Ms. Cherry.

119.    Defendants used Accurint or TLO to obtain, disclose and use personal information

regarding Ms. Cherry.

120.    Defendants made a false representation to Accurint or TLO to obtain personal

information regarding Ms. Cherry that was derived from Ms. Cherry's motor vehicle record.

121.    Alternatively, the entity that obtained Ms. Cherry's personal information

from Accurint or TLO and disclosed the personal information to defendants, made a false

representation to Accurint or TLO to obtain personal information regarding Ms. Cherry that was

derived from Ms. Cherry's motor vehicle record.

122.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

123.    Defendants knowingly obtained, disclosed and used Ms. Cherry's personal

information, from a motor vehicle record, for the purpose of engaging in their scam to extort the

payment of money from Ms. Cherry through numerous false threats, including false threats of

litigation and false threats of criminal prosecution.

124.    Defendants knowingly obtained, disclosed and used Ms. Cherry's personal

information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with

willful or reckless disregard for the law.

125.    No defendant had a "permissible use" as the phrase is defined in the DPPA to

obtain, use or disclose Ms. Cherry's personal information obtained from Accurint or TLO.

126.    No defendant had Ms. Cherry's consent, permission, authorization or waiver to obtain Ms. Cherry's personal information from Accurint or TLO.

127.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

128.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

129.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

130.    Each defendant knew, or should have known, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

131.    Each defendant shared Ms. Cherry's personal and private financial information among the other defendants, knowing that the other defendants would engage in the unlawful debt collection practices that are described in this complaint.

132.    Each defendant owed a duty of care to Ms. Cherry, not to obtain and not to share Ms. Cherry's personal and private financial information with entities that each defendant knew or should have known had no right to possess the information and that each defendant knew or should have known would use that information to attempt to unlawfully coerce the payment of money from Ms. Cherry. Each defendant breached the duty of care owed to Ms. Cherry.

133.    As an actual and proximate result of the acts and omissions of defendants and

their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

134.    Plaintiff incorporates the foregoing paragraphs by reference.

135.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692b;

b)    Defendants violated 15 U.S.C. § 1692c;

c)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

## Count 2 – Drivers Privacy Protection Act

136.    Plaintiff incorporates the foregoing paragraphs by reference.

137.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to 18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

## Count 3 – Michigan Regulation of Collection Practices Act

138.    Plaintiff incorporates the foregoing paragraphs by reference.

139.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

33

b)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the
purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication
with a debtor the following: (i) the legal status of a legal action being taken or
threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the
nonpayment of a debt will result in the debtor's arrest or imprisonment, or the
seizure, garnishment, or sale of the debtor's property;

d)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor
without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or
abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure
designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

140.    Plaintiff incorporates the foregoing paragraphs by reference.

141.    Each defendant has violated the MOC.  Each defendant's violations of the MOC
include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

d)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: December 12, 2017                    /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            6140 28th Street SE, Suite 115
                                            Grand Rapids, Michigan 49546-6938
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com